1   ANDRÉ BIROTTE JR.
    United States Attorney
2   DENNISE D. WILLETT
    Assistant United States Attorney
3   Chief, Santa Ana Branch Office
    JOSHUA M. ROBBINS (Cal. State Bar No.: 270553)
4   Assistant United States Attorney
        8000 United States Courthouse
5       411 West Fourth Street
        Santa Ana, California  92701
6       Telephone:  (714) 338-3538
        Facsimile:  (714) 338-3708
7       Email: joshua.robbins@usdoj.gov

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                       SOUTHERN DIVISION

11
    IN THE MATTER OF THE          )   No. SACV14-00592 RT (AN)
12  EXTRADITION OF                )   _____
                                  )
13                                )   GOVERNMENT'S NOTICE OF LODGING
    DOUGLAS WAYNE SCHNEIDER,      )   OF (1) REQUEST FOR EXTRADITION
14                                )   AND (2) FORMAL EXTRADITION
    A Fugitive from the           )   PAPERS
15  Government of Canada.         )
                                  )   EXHIBIT 2
16                                )
                                  )
17                                )
                                  )
18  _____)
                                  )
19

20

21

22

23

24

25

26

27

28

                                    1



U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY**
**EVIDENCE ACCOMPANYING REQUISITIONS IN**
**THE UNITED STATES FOR EXTRADITION**
**AMERICAN FOREIGN SERVICE**

## OTTAWA, CANADA  03-19-2014
Place and Date *(mm-dd-yyyy)*

I, _____ Russel J. Brown _____ , _____ Consul General of the United States
Name                                                                    Title

of the United States of America at ____ Ottawa, Canada ____

hereby certify that the annexed papers, being ____ supporting documents ____

_____

proposed to be used upon an application for the extradition from the United States of America

of  Douglas Wayne SCHNEIDER

charged with the crime of ____ the alleged commission of four (4) offences under the Alberta

Securities Act

alleged to have been committed in _____ the Province of Alberta _____

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of ____ Canada ____

as required by Title 18, United States Code, Section 3190.

In testimony whereof I hereunto sign my name and cause my seal of office to be affixed

this _____ 19th _____ day of _____ March 2014 _____
Month and Year

*[signature]*
Signature

Russel J Brown, Consul General of the United States
Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2007

Department of Justice
Canada

Ministère de la Justice
Canada

Ottawa, Canada
K1A 0H8

## CERTIFICATE OF AUTHENTICATION

*IN THE MATTER OF the extradition of Douglas Wayne
SCHNEIDER from the United States of America to Alberta,
Canada*

I, CATHY CHALIFOUR, Counsel for the International Assistance Group,
Department of Justice of Canada, do hereby certify:

THAT attached to this Certificate is authenticated documentation presented
by Canada in support of the extradition of *DOUGLAS WAYNE SCHNEIDER*
who is wanted in the Province of Alberta to stand trial for alleged
commission of four offences under the *Alberta Securities Act*.

THAT the documentation attached to this certificate is composed of:

- the original Statement of Don Young, Associate Director and Chief
  Litigation Counsel, Alberta Securities Commission, prepared on March
  13, 2014.
- the original Affidavit of Vi Pickering, Securities investigator with the
  Alberta Securities Commission, prepared on March 14, 2014.

The Seal of the Minister of Justice of Canada is hereby affixed this 19th day of
March, 2014.

Cathy Chalifour

Canada 

**IN THE MATTER** of a request by Canada for the extradition Douglas Wayne SCHNEIDER from the United States of America with respect to the alleged commission of four offences under the Alberta *Securities Act* ("Act").

### STATEMENT REGARDING RELEVANT MATTERS OF LAW BY DON YOUNG, ASSOCIATE DIRECTOR AND CHIEF LITIGATION COUNSEL ALBERTA SECURITIES COMMISSION

I, Don Young, of the City of Calgary in the Province of Alberta, Canada, hereby state:

**Qualifications**

1.   I am a citizen of Canada and a resident of Calgary, Alberta, Canada.  In 1991, I received a Bachelor of Laws degree from the University of Calgary Law School.  I articled for a year and was called to the Bar of the Province of Alberta in 1992.  I have been a member in good standing of the Law Society of Alberta since being called.  As such, I am entitled to practice law as a barrister and solicitor in the Province of Alberta.

2.   From 2000 until the present, I have been employed by and have practiced law at the Alberta Securities Commission ("ASC").  I am in the Enforcement Division of the ASC, with the title and role of Associate Director and Chief Litigation Counsel.  The ASC office is located at Suite 600, 250 – 5th Street SW, Calgary, Alberta, Canada.

3.   The ASC is responsible for the regulatory administration of Alberta securities laws.  "Alberta securities laws" is defined in the Act, and includes the Act, the regulations, and any decisions made by the ASC or the Executive Director of the ASC ("Executive Director").

4.   Litigation Counsel in the Enforcement Division of the ASC are, shortly following hire, appointed by the Alberta government as agents of the Crown in Right of Alberta. I am so appointed.

5.      Under the legislative scheme created by the Act, I, and other Litigation Counsel so appointed, have the discretion (acting through the direction of the Executive Director) to prosecute any contravention of Alberta securities laws either in an administrative proceeding commenced before a panel of members of the ASC, or as a provincial offence before a judge of the Provincial Court of Alberta.  Pursuant to section 194 of the Act, any contravention of Alberta securities laws is an offence and liable to a fine of not more than $5,000,000 or to imprisonment for a term of not more than 5 years less a day, or to both.

6.      In my capacity as Associate Director and Chief Litigation Counsel (and in prior roles at the ASC, as Manager Litigation and as Litigation Counsel), I have represented the ASC in quasi-criminal matters before the Provincial Court of Alberta, the Court of Queen's Bench of Alberta and the Court of Appeal for Alberta.  I have also had extensive experience prosecuting breaches of Alberta securities laws before administrative tribunals composed of ASC Members.  As stated above, breaches and offences are based on the same sections in the Act.

7.      Prior to instituting this proceeding, I made a request of Shelia Brown Q.C., Director, Alberta Justice – Special Prosecutions, for her approval of ASC staff taking action in Provincial Court against Douglas Schneider, along with a co-accused Kenneth Fowler. She approved of our course of action.

8.      I have reviewed all of the materials submitted with this request. I am familiar with the facts of this case and I have an expertise in criminal law such that I am able to attest to the sufficiency of the case and the jurisdiction in Alberta, Canada, to prosecute this offence.   In keeping with my exercise of prosecutorial discretion, I am satisfied that prosecution of Douglas Schneider is in the public interest and that there is a reasonable likelihood of conviction.

**Overview of Extradition Request**

9.     Canada is seeking the extradition of Douglas Schneider so he may face charges under the Act of:  acting as an advisor or dealer of securities without being registered in violation of section 75, making prohibited representations regarding securities in violation of section 92, perpetrating a fraud in relation to securities in violation of section 93, and distributing securities without filing a prospectus in violation of section 110.

10.     These charges arose from the allegedly improper sale of preferred shares of The Investment Exchange Mortgage Corporation ("TIE") to investors in Alberta, through which  approximately $11,000,000 was raised in the relevant time frame underlying the charges.

11.     A person is charged with a crime or quasi-criminal offence in Canada when an Information is sworn before a justice. The charge is formally instituted when an informant swears under oath that he or she has reasonable and probable grounds to believe that an accused has committed the offence(s) detailed in the Information. Following the laying of an Information, a warrant for the arrest of the accused may be issued where the Justice of the Peace considers that a case for doing so is made out.

12.     In this case, charges in Calgary, Alberta, relating to multiple commissions of securities law offences were laid by the swearing of an Information by ASC Securities Investigator, Viola Pickering ("Securities Investigator Pickering") before Justice of the Peace W.D. Milne on January 24, 2014.  Justice of the Peace W.D. Milne also issued an arrest warrant for each of Douglas Schneider and Keith Fowler on January 24, 2014.   **Exhibit A** hereto is a copy of the Information sworn on January 24, 2014, and **Exhibit B** hereto is a copy of the Warrant for the Arrest of Douglas Schneider.

13.     I have reviewed Securities Investigator Pickering's affidavit and the attached exhibits, and have also reviewed documentary evidence that was provided to me by Securities Investigator Pickering.  I drafted the Information for her review and swearing.  Douglas

Schneider has not been arrested in Canada in relation to these charges, but I am informed by Securities Investigator Pickering that he was arrested in California, U.S.A pursuant to our request for his provisional arrest, on February 28, 2014, and is being held in custody in that country.

**Securities Act Provisions**

14.    The Act is a duly enacted statute of the Legislature of Alberta containing the laws with respect to the administration and enforcement of matters involving transactions and other dealings with securities in the Province of Alberta. The Act was in force at the time of the commission of the alleged offences in this case, and continues to be in force.

15.    Section 194(1) of the Act states:

> A person or company that contravenes Alberta securities laws is guilty of an offence and is liable to a fine of not more than $5,000,000 or to imprisonment for a term of not more than 5 years less a day, or to both.

16.    Douglas Schneider has been charged with breaching four provisions of Alberta securities laws, each of which constitutes an offence under section 194(1) of the Act.

*Offence: Dealing and/or Advising in Securities without being Registered*

17.    Section 75(1) of the Securities Act, now states:

> Unless registered in accordance with Alberta Securities laws, a person or company shall not act as
>
> (a) a dealer,
>
> (b) an adviser, or…

18.     Prior to September 28, 2009, section 75(1)(a) of the Act provided that no person or company was permitted to "trade" in a "security" unless the person or company was registered with the Executive Director to do so.  The term trade is broadly defined in the Act.  It includes "any sale or disposition of a security for valuable consideration," and "any act, advertisement, solicitation, conduct or negotiation made directly or indirectly in furtherance of" a sale or disposition of a security.  The term security is also broadly defined in the Act, and includes shares of a corporation such as those underlying the charges here.

19.     Since September 28, 2009, section 75(1)(a) of the Act reads as above, and provides that no person or company is permitted to act as a "dealer" unless registered in accordance with Alberta securities laws.  Subparagraph 1(m) of the Act defines "dealer" to include a person or company "engaging in or holding itself out as engaging in the business of" dealing or trading in securities.

20.     On the facts of this case, ASC staff has reasonable and probable grounds to believe Douglas Schneider traded in securities of TIE to investors without registration as a salesperson.  On the same facts, ASC staff also believes he acted as a dealer without registration.

*Offence: Illegal Distribution*

21.     Section 110(1) of the Act, states:

No person or company shall trade in a security on the person's or company's own account or on behalf of any other person or company if the trade would be a distribution of the security unless:

(a) a preliminary prospectus has been filed and the Executive Director has issued a receipt for it, and

(b) a prospectus has been filed and the Executive Director has issued a receipt for it.

22.   Section 110(1) of the Act provides, in part, that no person or company shall trade in a security if the trade would be a "distribution" of the security, unless a preliminary prospectus and prospectus have been filed with and receipted by the Executive Director. The term distribution includes "a trade in securities of an issuer that have not been previously issued." An "issuer" includes a person or company that has outstanding securities, is issuing securities, or proposes to issue securities.

23.   In this case, ASC staff have reasonable and probable grounds to believe that Douglas Schneider engaged in trades of securities of TIE to investors, and that these trades were in securities that had not been previously issued. As such, the trades were distributions under the Act. Neither a preliminary prospectus or prospectus was filed with the Executive Director, nor was a receipt issued for same.

*Offence: Misrepresentations*

24.   Section 92(4.1) of the Act, states:

No person or company shall make a statement that the person or company knows or reasonably ought to know:

(a) in any material respect and at the time and in the light of the circumstances in which it is made,
   (i) is misleading or untrue, or
   (ii) does not state a fact that is required to be stated or that is necessary to make the statement not misleading, and

(b) would reasonably be expected to have a significant effect on the market price or value of a security or an exchange contract.

25.   Misrepresentations, when made in regards to the sale of securities, including those by omission, are incompatible with the basic objectives of fairness and assisting investors to make informed investment decisions.

26.   To establish a misrepresentation under section 92(4.1), it must be proven that:

(a) a statement was made by a party;

(b) the party knew or reasonably ought to have known that the statement

was, in a material aspect, untrue or omitted a fact required to be stated or necessary to make the statement not misleading; and

(c) the party knew or reasonably ought to have known that the statement would reasonably be expected to have a significant effect on the market price or value of a security.

27.    On the facts of this case, ASC staff have reasonable and probable grounds to believe that Douglas Schneider made representations to investors in TIE securities that he knew, or ought to have known, were misleading or untrue.  These representations were material, in that they would reasonably be expected to have a significant effect on the market price or value of the TIE securities.

*Offence: Fraud*

28.    Section 93(b) of the Act, states:

No person or company shall, directly or indirectly, engage or participate in any act, practice or course of conduct relating to a security or exchange contract that the person or company knows or reasonably ought to know will: …

(b) perpetrate a fraud on any person or company.

29.    The test for fraud involves four considerations, two each for the elements of *actus reus* and *mens rea*.  The *actus reus* of fraud is proven when a "prohibited" or "dishonest act" occurs, resulting in the deprivation of another.  The prohibited or dishonest act can be an "act of deceit, a falsehood, or some other fraudulent means."  "Deceit" or "falsehood" is present where a party has represented a certain situation was something other than what it really was.  The phrase other fraudulent means is intended to capture other dishonest acts which may not be "deceit" or "falsehood."  Included in this category are situations of "personal use of corporate money, failure to disclose important facts, unauthorized diversion or taking of money or property, and the unauthorized use of investor money." *Re Arbour Energy Inc.,* 2012 ABASC 131 para. 977-980.

30.    As to the *mens rea* of fraud, it must be proven that the fraudulent actor had subjective awareness of the prohibited act, and that the act placed an other's economic interests at risk.

31.    ASC staff have reasonable and probable grounds to believe Douglas Schneider made false or misleading statements to investors to induce them to purchase TIE securities. The sale of those securities to investors was illegal.  The use made of the invested funds was not as represented to investors, and their pecuniary interests have been put at risk. Douglas Schneider benefitted directly from the investment in TIE securities.

*Limitation Period*

32.    Section 201 of the *Securities Act* states that:

> No proceedings under this Part shall be commenced in a court or before the Commission more than 6 years from the day of the occurrence of the event that gave rise to the proceedings.

**Opinion**

33.    I have carefully reviewed the affidavit of Securities Investigator Pickering and its accompanying exhibits.

34.    The evidence disclosed in that affidavit and those exhibits, as well as other evidence generated in the investigation of this matter, satisfy me that there is a reasonable prospect Douglas Schneider will be convicted of four offences under Section 194 of the Securities Act.

35.    It is my opinion that the ASC has the statutory discretion to proceed against Douglas Schneider in the Provincial Court of Alberta in respect of these charges.

36.    It is also my opinion that the offences with which Douglas Schneider has been charged are not of a political character, nor have they been laid against him on account of race, tribe, nationality, religion, sex or political opinion.  If returned to Canada, he will not be prejudiced by reason of race, tribe, nationality, religion, sex or political opinion.

37.    Extradition is sought and, if successful, the ASC, as agent of the Crown, will proceed with the prosecution of Douglas Schneider for the aforementioned offences.

38.    This statement is made in good faith in support of a request by Canada for the extradition of Douglas Schneider with respect to the alleged offences, and for no improper purpose.

_____

**Don Young**
**Associate Director and Chief Litigation Counsel,**
**Alberta Securities Commission**

Dated in Calgary, Alberta on March 13, 2014.

STATEMENT REGARDING RELEVANT MATTERS OF LAW BY DON YOUNG,
ASSOCIATE DIRECTOR AND CHIEF LITIGATION COUNSEL
ALBERTA SECURITIES COMMISSION DATED MARCH 13, 2014

**Exhibit A**
Copy of the Information Sworn on January 24, 2014



CANADA
PROVINCE OF ALBERTA
PROVINCE D'ALBERTA

FILE NO. 140097494P1
POLICE ASC   # ENF-009055

INFORMATION
ON BEHALF OF HER MAJESTY THE QUEEN

DENONCIATION
AU NOM DE SA MAJESTE LA REINE

THIS IS THE INFORMATION OF            LES PRESENTES CONSTITUENT

    VIOLA PICKERING                *Securities Investigator*

                                     (OCCUPATION)
OF 600, 250-5TH STREET SW, CALGARY, AB, T2P 0R4

HEREINAFTER CALLED THE INFORMANT      CI-APRES APPELE LE DENONCIATEUR

THE INFORMANT SAYS THAT HE HAS        LE DENONCIATEUR DECLARE QU'IL A
REASONABLE GROUNDS TO BELIEVE         DES MOTIFS RAISONNABLES
AND DOES BELIEVE THAT:                DE CROIRE ET QU'IL CROIT QUE:

01   KENNETH CHARLES FOWLER (DOB 1950-12-12) OF NFA, AB
     AND
02   DOUGLAS WAYNE SCHNEIDER (DOB 1957-03-05) OF NFA, AB

      COUNT   1: BETWEEN JANUARY 24, 2008, AND JANUARY 1, 2013, AT OR NEAR
      CALGARY, ALBERTA, TRADED IN SECURITIES OF THE INVESTMENT EXCHANGE
      MORTGAGE CORPORATION WITHOUT REGISTRATION WITH THE EXECUTIVE DIRECTOR
      OF THE ALBERTA SECURITIES COMMISSION AS A SALES PERSON, IN
      CONTRAVENTION OF SUBSECTION 75(1)(A)(II) OF THE SECURITIES ACT, RSA
      2000, C. S-4, AS AMENDED, AND DID THEREBY COMMIT AN OFFENCE CONTRARY
      TO SECTION 194 OF THAT ACT.

                                              ( S )

      COUNT   2: BETWEEN JANUARY 24, 2008, AND JANUARY 1, 2013, AT OR NEAR
      CALGARY, ALBERTA, ENGAGED IN A DISTRIBUTION OF SECURITIES OF THE
      INVESTMENT EXCHANGE MORTGAGE CORPORATION WITHOUT FILING AND RECEIVING
      A RECEIPT FOR A PRELIMINARY PROSPECTUS AND PROSPECTUS FROM THE
      EXECUTIVE DIRECTOR OF THE ALBERTA SECURITIES COMMISSION, IN
      CONTRAVENTION OF SECTION 110(1) OF THE SECURITIES ACT, RSA 2000, C.
      S-4, AND DID THEREBY COMMIT AN OFFENCE CONTRARY TO SECTION 194 OF
      THAT ACT.

                                              ( S )

      COUNT   3: BETWEEN JANUARY 24, 2008, AND JANUARY 1, 2013, AT OR NEAR
      CALGARY ALBERTA, MADE A STATEMENT THAT WAS MISLEADING OR UNTRUE, OR
      FAILED TO STATE A FACT NECESSARY TO MAKE A STATEMENT NOT MISLEADING,
      TO WIT FUNDS INVESTED IN THE INVESTMENT EXCHANGE MORTGAGE
      CORPORATION WOULD BE USED TO MAKE SHORT TERM LOANS OR MORTGAGES TO
      THIRD PARTIES, IN CONTRAVENTION OF SECTION 92(4.1) OF THE SECURITIES
      ACT, RSA 2000, C. S-4, AND DID THEREBY COMMIT AN OFFENCE CONTRARY TO
      SECTION 194 OF THAT ACT.

                                              ( S )



PAGE    2
140097494P1

COUNT   4: BETWEEN JANUARY 24, 2008, AND JANUARY 1, 2013, AT OR NEAR CALGARY, ALBERTA, DIRECTLY OR INDIRECTLY ENGAGED OR PARTICIPATED IN AN ACT, PRACTICE OR COURSE OF CONDUCT IN RELATION TO SECURITIES OF THE INVESTMENT EXCHANGE MORTGAGE CORPORATION THAT THEY KNEW OR REASONABLY OUGHT TO HAVE KNOWN WOULD PERPETRATE A FRAUD ON A PERSON OR PERSONS, IN CONTRAVENTION OF SECTION 93 OF THE SECURITIES ACT, RSA 2000, C. S-4, AND DID THEREBY COMMIT AN OFFENCE CONTRARY TO SECTION 194 OF THAT ACT.

( S )

SWORN BEFORE ME THIS
ASSERMENTS DEVANT MOI

24 DAY OF JANUARY , 2014,
AT CALGARY, ALBERTA

-----------------------------
JUSTICE OF THE PEACE        W. D. Milne
JUGE DE PAIX        Justice of the Peace
in and for the Province of Alberta

-----------------------------
SIGNATURE OF
INFORMANT

SIGNATURE DU
DENONCIATEUR

ACCUSED                ENDORSEMENTS
ALL WARRANT: JANUARY 24, 2014, CAL #CMO    06:00

ID: C013326027
ID: C013922823

January 24, 2014

ALLEGATIONS CONSIDERED
FORM 7 WARRANT TO ISSUE
IN THE PUBLIC INTEREST

W. D. Milne
Justice of the Peace
in and for the Province of Alberta

CALGARY
ALBERTA
JAN 24 2014
HEARING
OFFICE

STATEMENT REGARDING RELEVANT MATTERS OF LAW BY DON YOUNG,
ASSOCIATE DIRECTOR AND CHIEF LITIGATION COUNSEL
ALBERTA SECURITIES COMMISSION DATED MARCH 13, 2014

**Exhibit B**
Copy of the Warrant for the Arrest of Douglas Schneider



WARRANT FOR ARREST
Mandat d'arrestation

AG 421
REV 02/88
CRIMINAL CODE FORM 7
Code criminel formule 7

CANADA
PROVINCE OF ALBERTA/Province d'Alberta
POLICE FILE NO/No du dossier de police: EHF-009055
ENFORCEMENT AGENCY/Organisme chargé de l'application de la loi: ASC

14 02881

FILE-TK NO/No de dossier: 14009749P1-02-001                    PAGE 01

TO THE PEACE OFFICERS IN THE SAID PROVINCE:

Aux agents de la paix de ladite province:

THIS WARRANT IS ISSUED FOR THE ARREST OF

Le présent mandat est décerné pour l'arrestation de

"SCHNEIDER" DOUGLAS, WAYNE

SEX/Sexe: M

DATE OF BIRTH/Date de naissance: 1957MAR05

OF/de        NFA
             AB

HEREINAFTER CALLED THE ACCUSED.

ci-après appelé le prévenu.

WHEREAS THE ACCUSED HAS BEEN CHARGED THAT

ATTENDU QUE le prévenu a été inculpé d'avoir

BETWEEN JANUARY 24, 2008, AND JANUARY 1, 2013, AT OR NEAR CALGARY, ALBERTA, TRADED IN SECURITIES OF THE INVESTMENT EXCHANGE MORTGAGE CORPORATION WITHOUT REGISTRATION WITH THE EXECUTIVE DIRECTOR OF THE ALBERTA SECURITIES COMMISSION AS A SALES PERSON, IN CONTRAVENTION OF SUBSECTION 75(1)(A)(II) OF THE SECURITIES ACT, RSA 2000, C. S-4, AS AMENDED, AND DID THEREBY COMMIT AN OFFENCE CONTRARY TO SECTION 194 OF THAT ACT.

CROWN PROCEEDS SUMMARILY

**** ADDITIONAL CHARGES ****

| | | |
|---|---|---|
| 14009749P1-02-002 - 194(1) SEC BETWEEN JANUARY 24, 2008 AND JANUARY 01, 2013 AT CALGARY (SUMMARY) | ASC | EHF-009055 |
| 14009749P1-02-003 - 194(1) SEC BETWEEN JANUARY 24, 2008 AND JANUARY 01, 2013 AT CALGARY (SUMMARY) | ASC | EHF-009055 |
| 14009745P1-02-004 - 194(1) SEC BETWEEN JANUARY 24, 2008 AND JANUARY 01, 2013 AT CALGARY (SUMARY) | ASC | EHF-009055 |

AND WHEREAS:

ET ATTENDU:

There are reasonable grounds to believe that it is necessary in the public interest to issue this warrant for the Arrest of the Accused.        (507(4); 512(1))

qu'il y a des motifs raisonnables de croire qu'il est nécessaire dans l'intérêt public de décerner le présent mandat pour l'arrestation du prévenu.        (507(4); 512(1))

THIS IS, THEREFORE, TO COMMAND YOU, IN HER MAJESTY'S NAME, FORTHWITH TO ARREST THE SAID ACCUSED AND TO BRING HIM BEFORE

ME OR ANY OTHER JUSTICE OF THE PEACE IN AND FOR THE PROVINCE OF ALBERTA,

À CES CAUSES, LES PRÉSENTES ONT POUR OBJET DE VOUS ENJOINDRE, au nom de Sa Majesté, d'arrêter immédiatement ledit prévenu et de l'amener devant

TO BE DEALT WITH ACCORDING TO LAW.

pour qu'il soit traité selon la loi.

TERMS AND CONDITIONS IF ANY:
Modalités:

DATED THIS/Fait le 24TH DAY OF JANUARY, 2014   AT/à CALGARY
IN THE PROVINCE OF ALBERTA.

dans la province d'Alberta.

ISSUED BY: MILNE, W.D.

S. SOTO

PROVINCIAL JUDGE OR JUSTICE/ REGISTRAR, CLERK OF THE COURT
Juge provincial ou juge de paix, registraire, greffier du tribunal

---

CANADA
PROVINCE OF ALBERTA
Province d'Alberta

ENDORSEMENT OF WARRANT
Visa du mandat

FORM 29
CRIMINAL CODE
SECTION 499 and
SUBSECTION 507(6)

Formule 29
Code criminel
Article 499 et
Paragraphe 507(6)

WHEREAS THIS WARRANT IS ISSUED UNDER SECTION 507, 508 OR 512 OF THE CRIMINAL CODE IN RESPECT OF AN OFFENCE OTHER THAN AN OFFENCE MENTIONED IN SECTION 522 OF THE CRIMINAL CODE, I HEREBY AUTHORIZE THE RELEASE OF THE ACCUSED PURSUANT TO SECTION 499 OF THAT ACT.

ATTENDU QUE le présent mandat est décerné en vertu des articles 507, 508 ou 512 du code criminel, relativement à une infraction autre que celles visées à l'article 522, j'autorise par les présentes la mise en liberté du prévenu en application de l'article 499 de cette loi.

DATED THIS/Fait le 24TH DAY OF JANUARY, 2014   AT/à CALGARY
IN THE PROVINCE OF ALBERTA.

dans la province d'Alberta.

CLERK OF THE COURT FOR THE JUSTICE OF THE PEACE
Greffier du tribunal pour le juge de paix

ORIGINATING COURT:
CALGARY PROVINCIAL COURT
CALGARY COURTS CENTRE
601 5TH STREET S.W
CALGARY, ALBERTA
T2P-5P7

WARRANT EXECUTED THIS _____ DAY OF _____   TIME _____ PLACE _____

PEACE OFFICER

*****END OF DOCUMENT*****

AFFIDAVIT OF SECURITIES INVESTIGATIOR VI PICKERING

Sworn on March 14, 2014

I, Vi Pickering, of Calgary, Alberta, MAKE OATH AND SAY THAT:

Introduction

1. I have been employed as a securities investigator with the Alberta Securities Commission ("**ASC**") since October 27, 2008.  Since September 26, 2012, I have been the lead investigator in a review of securities-related activities of The Investment Exchange Mortgage Corporation ("**TIE Mortgage**"), Kenneth Charles Fowler ("**Fowler**"), and Douglas Wayne Schneider ("**Schneider**").  Accordingly, I am familiar with this investigation as it relates to Schneider and have personal knowledge of the information contained in this affidavit.

The Charges

2. Canada is seeking the extradition of Schneider so he may face the following charges under the *Securities Act*, R.S.A., 2000, c. S-4, as amended ("**Act**"): trading in securities without registration in contravention of section 75, making prohibited representations regarding securities in contravention section 92, perpetrating a fraud in relation to securities in contravention of section 93, and distributing securities without a preliminary prospectus or prospectus in contravention of section 110.

3. Any contravention of Alberta securities laws is an offence pursuant to section 194, and is liable to a fine of not more than $5,000,000 or to imprisonment for a term of not more than 5 years less a day, or to both.

4. These charges arose from the allegedly improper sale of securities of TIE Mortgage to investors in Alberta, through which approximately $11,000,000 was raised in the relevant time frame.

Synopsis

5. The ASC is the regulatory agency responsible for overseeing the capital markets in the province of Alberta and administering the Act.

6. On September 30, 2012, the ASC issued an investigation order appointing me, among others, to investigate securities-related matters in respect of TIE Mortgage, The Investment Exchange Corp., Fowler and Schneider.  The scope of the investigation included potential contraventions in respect of registration, prohibitions respecting representations, prohibited transactions, prospectus requirements, compliance with the registration requirements and compliance with the prospectus and registration exemptions.  This order was amended to add additional investigators and to extend the time period under review to January 1, 2007 ("**Investigation Order**").

Subjects of Investigation

7.  TIE Mortgage is an Alberta corporation with its registered office in Calgary, Alberta. It was incorporated on December 20, 2001. Fowler is the sole director and shareholder of TIE Mortgage.

8.  Schneider is Fowler's business associate and was the primary salesperson soliciting investments in TIE Mortgage securities.

9.  The ASC was given a copy of the TIE Mortgage financial statements for 2012 from an investor, and Schneider is represented on those statements as a director of the company.

10. The ASC obtained TIE Mortgage financial statements for 2011 from public filings in a civil proceeding, and they are signed by Schneider as Secretary to TIE Mortgage.

History with the ASC

11. The ASC conducted searches of the National Registration Database which maintains the records of parties registered to deal or advise in securities in Canada and confirmed that none of TIE Mortgage, Fowler or Schneider have ever been registered with the Executive Director of the ASC (**"Executive Director"**) in any capacity.

12. Searches in the ASC records revealed that a preliminary or final prospectus was never filed with, nor was a receipt issued by, the Executive Director for the distribution of any securities of TIE Mortgage.

13. Schneider was previously sanctioned by the ASC for securities misconduct related to another company in 2005. In that proceeding, he was ordered by the ASC to cease trading in securities for four years; banned from acting as a director and officer of any issuer for four years; directed to pay to the ASC an administrative penalty of $10,000; and directed to pay investigative costs of $7,500.

Witness Interviews

14. From November 8 to December 6, 2012, I interviewed 21 investors in TIE Mortgage. From those interviews I learned the following:

   a.  From 2003 to 2012, TIE Mortgage was offering securities to the Alberta public;

   b.  Steps were not taken to ensure investors were qualified under any applicable exemption from the prospectus and registration requirements under the Act;

   c.  Certain of the investors were introduced by Schneider to the TIE Mortgage investment, and certain investors described Schneider as a business partner of Fowler;

d. Many investors were told their funds would be used by TIE Mortgage to re-invest in mortgages, or to provide loans to small businesses (secured by assets such as land), and Schneider made or was present when statements such as these were made to investors;

e. Certain of the investors attended investor presentations hosted by Schneider and Fowler in Medicine Hat, Alberta.  During one such presentation, held in October 2012:

- investors were shown a power point presentation on the financial status of TIE Mortgage, with some of the figures from the financial statements obtained by the ASC displayed;
- investors were advised that the investment was closed to the general public but available to current investors and their family and friends;
- investors were advised TIE Mortgage had no mortgages in default;
- investors were advised they could anticipate returns in excess of 12%, with such returns paid out quarterly in cash or reinvested.

15. During the course of my interviews of investors, I was provided with copies of cancelled cheques issued to TIE Mortgage, which showed funds were primarily deposited to a bank account held by TIE Mortgage ("**TIE Bank Account**").

16. From the investor interviews and other evidence, it appears that Schneider was aware of the operations of TIE Mortgage (being, in essence, the right hand man of Fowler), that he solicited investments into TIE Mortgage, and that he made misrepresentations to investors regarding the proposed use of their funds.

17. I interviewed the accountant whose name was listed as 'auditor' on the TIE Mortgage 'audited financial statements', and he stated he has never completed any accounting or audit work for TIE Mortgage.  He also stated that he did not prepare, approve of, or sign the opinion letter that bears his name and is attached to the 'audited financials'.

Use of Funds by TIE Mortgage

18. Fowler had sole signing authority on the TIE Bank Account into which investor funds were deposited.  A review of transactions in the TIE Bank Account led me and other investigators to look into numerous other accounts at various banks which Fowler or entities controlled by him had authority over.  Investor funds were transferred into these other accounts.

19. Included in these other accounts were ones related to credit facilities and to business accounts held by Southwell Group Inc., a company controlled by Fowler (collectively, the "**Fowler Accounts**").  Investor funds were also transferred to a self-directed, margin trading account which Fowler controlled (the "**Trading Account**").

20. I have reviewed records related to the TIE Bank Account, Fowler Accounts, and the Trading Account, and can say as follows:

    a.  TIE Mortgage investor funds were used to pay various credit cards issued by various financial institutions to Fowler;

    b.  TIE Mortgage investor funds were being transferred to and from the TIE Bank Account, the Fowler Accounts, and the Trading Account;

    c.  There was no evidence that investor funds were re-invested by TIE Mortgage into mortgages or loans despite this being represented to investors as the proposed used of their funds;

    d.  Fowler's only source of funds appear to be those invested in TIE Mortgage;

    e.  In summary, the TIE Mortgage investor funds were used primarily to:

        i.  Pay dividends to investors (that is, later investments were used to pay dividends owing on earlier investments);

        ii.  Pay personal and corporate credit cards for the benefit of Fowler (and on at least one occasion a payment of Schneider's credit card);

        iii.  Fund the trading of shares of Apple Inc. in the Trading Account;

        iv.  Pay Schneider commissions and fees totalling approximately $709,500 for the period from 2007 to 2013.

21. In May 2013, in the civil action alluded to above, Grant Thornton Limited (self described as a leading Canadian accounting, business advisory and risk management firm) was appointed by the Alberta Courts to act as receiver for TIE Mortgage (the "**Receiver**"). The first report prepared by the Receiver, available publically in Court filings, details the following:

    a.  TIE Mortgage first began to solicit investors in 2002;

    b.  Approximately 200 investors invested as much as $27 million in TIE Mortgage since 2002;

    c.  Marketing material used to sell the securities in TIE Mortgage to investors stated net proceeds would be used to invest in residential mortgages and to make loans to small businesses in order to provide investors with a secured rate of return;

    d.  Approximately $11.29 million flowed directly from the TIE Bank Account into the Fowler Accounts from 2002 to 2012;

        i.  These funds were largely used for day trading activities in the Trading Account;

        ii.  The Trading Account suffered losses of approximately $4.65 million;

        iii.  $625,000 out of the Fowler Accounts was used to pay Schneider;

e.  Eight credit cards used by Fowler were paid with funds invested into TIE Mortgage, with the credit card spending for 2006 to 2013 totalling approximately $1.4 million (not including approximately $421,000 Fowler took out as cash advances on credit cards); and

f.  There is no evidence of any re-investment in mortgages or loans made to third parties from the invested funds as was represented to investors.

22. Based on my review of the records for the TIE Bank Account, the Fowler Accounts, the Trading Account records, and the Receiver's findings, I believe that TIE Mortgage did not invest in mortgages or loans as represented to investors during the relevant period, or any similar product, but rather used the investor funds to pay returns to investors, to finance Fowler's lifestyle, to cover significant trading losses incurred by Fowler, and to pay Schneider.

Current Location of the Accused

23. On February 6, 2014, Canada submitted a request to the United States that a provisional arrest warrant be issued for Schneider.  The provisional arrest warrant was sought to prevent him from leaving the United States to travel to his former residence in Barbados, or elsewhere.

24. I was advised that Schneider was provisionally arrested on February 28, 2014 in California.

Identification of the Accused

25. The accused in this matter is Douglas Wayne Schneider.

26. Schneider was born on March 5, 1957.  Schneider has used Canadian passport #BA644571 as recently as June 16, 2013.  Prior to September 2009, Schneider was using Canadian passport #JE753293, I assume that this passport is expired.

27. Attached hereto and marked as **Exhibit A** to this affidavit is a photograph of Schneider.  This photograph was obtained from the Alberta Registrar of Motor Vehicle Services.

28. On March 12, 2014, I contacted Staff Sergeant Brian Christmann of the Medicine Hat Police Service in Medicine Hat, Alberta ("**Christmann**") and asked him show investors in TIE Mortgage a photograph of Schneider obtained from the Alberta Registrar of Motor Vehicle Services.

29. On March 12, 2014, I viewed the photograph Christmann obtained from the Alberta Registrar of Motor Vehicle Services and confirmed it is identical to the picture attached hereto as Exhibit A.

30. On March 12, 2014, I was informed by Christmann that he showed the photograph to Jackie Nicoll, an investor in TIE Mortgage, at the Medicine Hat Police Service station in Medicine Hat, Alberta on March 12, 2014 and he identified the person pictured as Schneider.  Jackie

Nicoll indicated in a statement that he invested in TIE Mortgage through Schneider who he thought was a partner in TIE Mortgage.

31. On March 12, 2014, I was informed by Christmann that he showed the photograph to Leon Goddu, a investor in TIE Mortgage, at the Medicine Hat Police Service station in Medicine Hat, Alberta on March 12, 2014 and he identified the person pictured as Schneider.  Leon Goddu indicated in a statement that Schneider convinced him to invest in TIE Mortgage and that Schneider helped him transfer funds for his investment.

Conclusion

32. Based on the information referred to above, and other information I have collected in my investigation in this matter, I have reasonable and probable grounds to believe that Schneider committed offences under the Act as follows:

   a. trading in securities of TIE Mortgage without registration with the Executive Director of the ASC as a salesperson or as a dealer, in contravention of, respectively, sections 75(1) (a) (ii) (salesperson) and 75(1)(a) (dealer) of the Act;

   b. engaging in a distribution of securities of TIE Mortgage without filing and receiving a receipt for a preliminary prospectus or prospectus from the Executive Director of the ASC, in contravention of section 110(1) of the Act;

   c. making statements that were misleading or untrue, or that failed to state a fact necessary to make a statement not misleading or untrue, to wit: funds invested in TIE Mortgage would be used to make short term loans or mortgages to third parties, in contravention of section 92 (4.1) of the Act; and

   d. directly or indirectly engaging or participating in an act, practice, or course of conduct in relation to securities of TIE Mortgage that he knew or reasonably ought to have known would perpetrate a fraud on a person or persons, in contravention of section 93 of the Act.

33. I make this affidavit in support of the request by Canada for the extradition of Schneider from the United States of America to Calgary, Alberta, Canada so that he may be tried for the offences with which he has been charged and for no other improper purpose.

Sworn before me at the City of Calgary,                     )
in the Province of Alberta, this 14th day                     )
of  March, 2014                                               )
                                                             )
_____                              )
A Notary Public in and for the Province of      )       Vi Pickering
Alberta                                                      )

**ERIC P. KELLER**
**Barrister & Solicitor**

#4761523 v7

Control Number          0022830000245847S

ES Date Of Issue        2006 Sep 21

Of Image Capture        2006 Sep 21 03:18 PM

e Code                  P245

This is Exhibit " *A* " referred to in the
                    Affidavit of

V. Pickering

Sworn before me this ___14th___ day

of ___March___ A.D., 20 _14_

A Notary Public, A Commissioner for Oaths
   in and for the Province of Alberta

**ERIC P. KELLER**
**Barrister & Solicitor**

